IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RAPHAEL S. TRICE,**
    **Petitioner,**

**v.**                                                   **Civil Action No. 5:08cv31**
                                                        **(JUDGE STAMP)**

**EDWARD F. REILLY,**
    **Respondent.**

## REPORT AND RECOMMENDATION

On January 17, 2008, the *pro se* petitioner, Raphael Trice, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is an inmate at the Gilmer Federal Correctional Institution in Glenville, West Virginia. In the petition, the petitioner challenges a decision of the U.S. Parole Commission. On April 7, 2008, the respondent filed a Motion to Dismiss and a Response to the Show Cause Order. On April 8, 2008, a Roseboro Notice was issued and on April 29, 2008, the petitioner filed a response.

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, et seq., is ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioner was sentenced on November 22, 1993, by the Superior Court of the District of Columbia to a 15-year prison term for assault with intent to rob while armed and in possession of a firearm during a crime of violence. (Doc. 10-4, p. 2). While he was incarcerated at the Federal Correctional Institution, Petersburg, Virginia, the petitioner was given a parole release hearing by the U.S. Parole Commission, and by a notice of action dated July 29, 1997, the Commission informed him that he was denied parole and continued for a rehearing in July 1999. (Doc. 10-4, p.

6). The petitioner was eventually paroled by the Commission on July 13, 2000. (Doc. 10-4, p. 7)

On September 3, 2004, his supervision officer requested that the Parole Commission issue a violator warrant for the petitioner because of his arrest for assault with a dangerous weapon. (Doc. 10-4, p. 8). Records from the Metropolitan Police Department ("MPD") establish that on August 30, 2004, police responded to a report of a man with a gun. Upon arrival at the scene, officers were told by the complainant, Beershebah Harper, the petitioner had produced a handgun and pointed it at her and her friends before driving away. Later, Harper and her friends were driving, and while they were stopped at a stop sign, the petitioner drove past, made a u-turn and parked his vehicle at an angle in their path. Harper alleged that the petitioner then shot twice at them, and then shot once more as she and her friends fled in their vehicle. (Doc. 10-4, pp. 10-11).

The Commission issued a violator warrant for the petitioner on September 15, 2004, charging him with assault with a dangerous weapon and felon in possession of a firearm. (Doc. 10-4, pp. 12-13). The petitioner was given his revocation hearing on March 2, 2005, where he was represented by counsel. Harper attended the hearing as an adverse witness, and the petitioner's grandmother and aunt appeared on his behalf as voluntary witnesses. Hearing Examiner Price ("Price") found that the petitioner had committed the offense of assault with a dangerous weapon and recommended that his parole be revoked and that none of the time spent on parole be credited to his sentence. Price also recommended that the petitioner be continued to a presumptive parole after the service of 26 months. Price applied the Commission's reparole guidelines at 28 C.F.R. § 2.20 and § 2.21 and determined that the petitioner's violation behavior should be rated as a Category Five severity, and the parolee's salient factor scored be scored as 7. With this offense severity rating and salient factor score, Price found that the appropriate guideline range was 36-48 months to be served before release,

and that a decision within the guideline range was warranted. (Doc. 10-5, pp. 12-16).

Upon subsequent review of the recommended decision, Examiner Patricia Denton ("Denton") disagreed with Price's offense severity rating and determined that the proper offense severity rating was Category Seven because he committed an assault with serious bodily injury intended. Denton found that the appropriate range was 64-92 months and that the petitioner should be continued to the expiration of his sentence. Reviewing examiner Stephen Husk and Vice Chairman Cranston Mitchell agreed with Denton's recommendation and by notice of action, dated March 18, 2005, the Commission informed the petitioner of the following decision: (1) revoke parole; (2) none of the time spent on parole shall be credited; and (3) continue to the expiration of the sentence. (Doc. 10-6, p. 1).

The petitioner appealed these decision to the Commission's National Appeals Board by an appeal dated March 14, 2005. (Doc. 10-6, p. 11). By a notice of action dated June 23, 2005, the Commission informed the petitioner that the previous decisions were affirmed but that his case was remanded for a special reconsideration hearing so that the Commission could take into consideration a prison sentence of 30 months that he had received as a result of an earlier conviction for assault with a dangerous weapon. (Doc. 10-6, p. 11).

The petitioner received his special reconsideration hearing on August 26, 2005, before Hearing Examiner Phyllis Baker ("Baker"). Baker recommended the that petitioner should be given a presumptive parole on February 1, 2008, to the consecutive 30-month term. Reviewing Examiner Kathleen Pinner ("Pinner") disagreed with this recommendation and recommended that the petitioner be continued to the expiration of the remainder of his original 15-year sentence. Pinner found that the petitioner would serve approximately 91 months in custody based on the combination

3

of the parole violator term on the 15-year sentence and the consecutive 30-month prison term, a disposition that fell with the reparole guideline range of 64-92 months. (Doc. 10-6, pp. 14-17). Reviewing examiner Husk and Commission Deborah Spagnoli concurred with Pinner's recommendation and by a notice of action dated September 27, 2005, the Commission informed the petitioner of the following decision: continue to expiration with special conditions of drug aftercare, anger management counseling, and monitoring by global positioning system. (Doc. 10-6, p. 18).

The petitioner appealed this decision to the Commission. (Doc. 10-7, pp. 1-3). By notice of action dated December 23, 2005, the Commission informed the petitioner that the previous decision was affirmed. (Doc. 10-8, p. 23).

The petitioner was given an interim hearing on August 15, 2007. (Doc.10-8, pp. 24-26. The hearing examiner reviewed the petitioner's excellent program performance and recommended an advancement of his presumptive release date on his parole violator term from December 29, 2009 to April 29, 2009. The Commission concurred with this recommendation and by a notice of action dated September 19, 2007, informed the petitioner that he was continued to a presumptive parole date of April 29, 2009 to his consecutive sentence. (Doc. 10-8, p. 27).

## II. CLAIMS OF PETITION

The petitioner charges that the Commission violated the Constitutional ban against ex post facto laws when it used guidelines for D.C. offenders adopted by the Commission in 2000, rather than the former 1987 guidelines of the D.C. Board of Parole in making the decision on his parole. The petitioner claims that the application of the Commission's guidelines are primarily concerned with punishment and recidivism, rather than post-incarceration rehabilitation, unlike the former guidelines of the D.C. Board. In support of this claim, the petitioner cites to the

decision issued in Fletcher v. Reilly, 443 F.3d 867 (D.C. Cir. 2006).

### III. STANDARD OF REVIEW

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

### IV. ANALYSIS

On August 5, 1998, the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir.1998). Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2). The Revitalization Act provided that the Parole Commission was to follow the parole law and regulations of the District of Columbia, but also granted the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code Ann. § 24-131(a)(1); Simmons v. Shearin, 295 F.Supp.2d 599, 602 (D.Md.2003).

Subsequently, the Commission established amendments and revisions to the 1987 guidelines

of the D.C. Board of Parole, which had remained in effect until August 5, 1998. See 28 C.F.R. §2.70, et. seq. On July 21, 1998, the Commission's amended version of the parole rules and guidelines were published in the Federal Register at 63 FR 39172 and are found at 28 C.F.R. §2.70 et. seq. The Commission's decision-making guidelines are found at 28 C.F.R. §2.80.

As previously noted, the petitioner alleges that the Commission violated his rights under the Ex Post Facto Clause of the United States Constitution by using the federal reparole regulations rather than the former D.C. reparole guidelines. The petitioner argues that the federal reparole guidelines concentrate on punishment and recidivism, while the former D.C. Parole Board's guidelines considered evidence of post-incarceration rehabilitation in making reparole determinations. The petitioner further argues that the federal reparole regulations place him at a significant risk of a longer term of incarceration than he faced when he was originally sentenced in 1993. The petitioner's arguments fail for a number of reasons.

First, the petitioner has already raised his ex post facto claim before the U.S. District Court for the Eastern District of Virginia, and the petition was dismissed on the merits. See Trice v. Reilly, et al., Civil Action No. 3:06cv078 (E.D.Va. Orders dated November 13, 2006 and March 13, 2007). Thereafter, the petitioner appealed to the Fourth Circuit, and the Court of Appeals affirmed the district's courts denial of habeas corpus relief. Trice v. Reilly. No. 06-7944 (4th Cir. July 19, 2007). Under the successive petitions rule found in 28 U.S.C. § 2244(a), a district court is not required to consider a habeas petition filed by a prisoner challenging his federal custody on the same ground that the petitioner advanced in an earlier habeas petition and lost after a full and fair litigation of his claim. This successive petitions rule applies not only to § 2255 petitions but also to repeated attempts to litigate issues regarding the execution of a sentence under 28 U.S.C. § 2241.

George v. Perill, 62 F.3d 333 (10th Cir. 1995); Glumb v,. Honsted, 891 F.2d 872 (11th Cir. 1990); Poyner v. U.S. Parole Commission, 878 F.2d 275, 277 (9th Cir. 1989); Sacco v. U.S. Parole Commission, 639 F.2d 441 (8th Cir. 1981). This rule remains the same under the 1996 AEDPA amendments. Barapind v. Reno, 225 F.3d 1100, 1111 (9th Cir. 20000); Valona v. United States, 138 F.3d 693, 695 (7th Cir. 1998); Triestman v. United States, 124 F.3d 361, 373 m.17 (2d Cir. 1997). See also Trader v. United States, 191 F.3d 448 (4th Cir. 1999) (unpublished opinion upholding the dismissal of a § 2241 petition as "an unauthorized second or successive motion").

Second, a number of federal circuit courts have concluded that the federal parole guidelines are not "laws" for the purpose of the Ex Post Facto Clause. See Kelly v. Southerland, 967 F.2d 1531, 1532-33 (11th Cir. 1992); Sheary v. U.S. Parole Comm'n, 822 F.2d 556, 558 (5th Cir. 1987); Vermouth v. Corrothers, 827 F.2d 599, 604 (th Cir. 1987). But see U.S.A. ex rel. Forman v. McCall, 776 F.2d 1156, 1159 (3rd Cir. 1985) (holding that "if administered without sufficient flexibility, the guidelines could be considered laws for ex post facto purposes," but recognizing that "[t]his position has since been rejected by every other circuit that has addressed the issue").

Third, even if applicable, as noted by the United States District Court for the Eastern District of Virginia in its decision denying the petitioner's previous § 2241, the application of the federal guidelines to his case does not violate the Ex Post Facto Clause. As the Court noted in its opinion, there are two elements necessary for an ex post facto violation: (1) a retrospective law, (2) that disadvantages the offender or leads to a substantial risk of a longer term of imprisonment. *Citing* Weaver v. Graham, 450 U.S. 24, 29 (1981). "The critical question is whether the law changes the legal consequences of acts completed before its effective date." Id. at 31. In the instant case, the act in question is the felony that led to the petitioner's parole revocation. That act occurred in 2004,

7

when the federal parole and reparole guidelines were already in effect. Therefore, when the petitioner committed the crime that led to his parole revocation, he did not have right to be reparoled under the D.C. Board guidelines. Therefore, the use of the federal reparole guidelines was not retrospective and did not disadvantage the petitioner or lead to a more substantial risk of a longer term of imprisonment.

Finally, the petitioner's repeated reliance on the D.C. Circuit's decision in <u>Fletcher v. Reilly</u> 433 F.3d 867 (D.C. Cir. 2006) is misplaced, because the facts in that case are clearly distinguishable. Fletcher committed the felony that led to his parole revocation **prior** to the federal Commission and the federal reparole guidelines taking effect. Therefore, arguably, the federal regulations created a risk that Fletcher would spend more time in prison because the federal guidelines do not require formal consideration of post-parole rehabilitation. Therefore, in Fletcher's case, both prongs of the <u>Weaver</u> ex post facto analysis were satisfied. Conversely, the petitioner did not commit the offense which led to his reparole consideration until 2004, well after the federal Commission had taken control of parole decisions. Therefore, the federal guidelines were not applied retroactively because they were applied to the petitioner's 2004 offense, an event that occurred **after** they were in place. Accordingly, the Commission's use of the federal guidelines in revoking the petitioner's parole and in his reparole decisions did not violate the Ex Post facto Clause.

## IV. RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc.10) be **GRANTED** and petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: September 4, 2008

        /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE